**MERLIN LAW GROUP, P.A.**
Jeffrey G. Zane (State Bar No. 024172)
JZane@merlinlawgroup.com
2999 North 44th Street, Suite 520
Phoenix, Arizona 85018
Telephone: (480) 315-9980
Facsimile: (480) 315-9984

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| MARCI KAPLAN, BRIAN KAPLAN, and LAUREN GILBERT, beneficiaries of deceased MARC KAPLAN,<br><br>*Plaintiffs*,<br><br>vs.<br><br>GENWORTH LIFE AND ANNUITY INSURANCE COMPANY,<br><br>*Defendant*. | Case No.:<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiffs, MARCI KAPLAN, BRIAN KAPLAN, and LAUREN GILBERT (whose maiden name was Lauren Kaplan) (collectively, "Beneficiaries"), life insurance beneficiaries of the deceased insured, MARC KAPLAN, by and through undersigned counsel, hereby allege against Defendant, GENWORTH LIFE AND ANNUITY INSURANCE COMPANY ("Genworth"), as follows:

**NATURE OF THE ACTION, PARTIES, JURISDICTION AND VENUE**

1. This is an action arising out of Genworth's breach of the subject life insurance contract, namely Genworth's wrongful refusal to provide the Beneficiaries with the life insurance benefits to which they were / are entitled under the subject life insurance contract. This action also arises out of Genworth's breach of the implied duty of good faith and fair dealing.

2. Plaintiff beneficiary, Marci Kaplan was, at all material times, a citizen of the State of Arizona and a resident of Maricopa County and *sui juris.*

3. Plaintiff beneficiary, Brian Kaplan, was, at all material times, a citizen of the

State of Arizona and a resident of Maricopa County and *sui juris*.

4. Plaintiff beneficiary, Lauren Gilbert (again, Lauren Kaplan was her maiden name), was, at all material times, a citizen of the State of Arizona and a resident of Maricopa County and *sui juris*.

5. The insured, Marc Kaplan, is deceased and survived by the Beneficiaries.

6. Upon information and belief, Genworth is a Virginia corporation, with its principal place of business in Richmond, Virginia, and doing business in the State of Arizona. At all material times, Genworth provided life insurance to Marc Kaplan pursuant to Genworth's policy number 5567628 (the "Policy"). Again, Marci Kaplan, Brian Kaplan, and Lauren Gilbert are beneficiaries under the Policy. A copy of the Policy is attached hereto as **Exhibit A.**

7. This Court has original jurisdiction over this matter pursuant to Title 28, United States Code, Section 1332, as the parties are diverse and the amount in controversy exceeds $75,000.00 exclusive of any fees, costs, interest, or the like.

8. Venue is proper in this Court pursuant to Title 28, United States Code, Section 1391(b)(2) because, for example, (a) the Policy was purchased by Marc Kaplan from Genworth and delivered to Marc Kaplan while he resided in Maricopa County, Arizona; (b) Marc Kaplan's death, triggering the Policy's coverage grants, occurred in Maricopa County, Arizona; (c) claim (Claim No. 99646, the "Claim") correspondence (including, most critically, the subject Claim denial correspondence; *i.e.*, breach of contract) unfolded with the Beneficiaries in Maricopa County, Arizona; (d) the damages that the Beneficiaries have suffered (and continue to suffer) arise out of Maricopa County, Arizona; and (e) the Beneficiaries reside in Maricopa County, Arizona.

## **COMMON ALLEGATIONS**

9. Marc Kaplan purchased $5,000,000.00 in term life insurance coverage from First Colony Life Insurance Company ("First Colony"), with a Policy effective date of March 15, 2000. *See* Ex. A. At the time, Marc was a resident of Scottsdale, Arizona.

10. The Policy's beneficiaries were his adult children, Brian Kaplan and Lauren Gilbert (again, Kaplan was her maiden name), and his mother, Barbara Kaplan, all of whom were residents of Arizona.

11. On or about April 7, 2004, Marc Kaplan requested his annual premium payment of $6,250.00 be changed to quarterly payments. Thereafter, Marc Kaplan made quarterly payments of $1,625.00.

12. First Colony merged with Genworth on or about January 1, 2007, and the Policy was through Genworth ever since.

13. On or about June 30, 2011, Marc Kaplan requested a change to his beneficiaries. The change consisted of changing the designation percentages to forty percent for both Brian Kaplan and Lauren Gilbert, and removing his mother and adding his ex-wife Marci Kaplan with a twenty percent designation.

14. Over the lifetime of the Policy, Genworth collected more premium monies from Marc Kaplan than were actually due, resulting in a premium surplus at the time of the purported missed premium payment (which such missed premium payment is discussed in further detail below).

15. Marc Kaplan ultimately began to suffer from bipolar disorder.

16. Due to his disability, Marc Kaplan became unable to handle many tasks such as paying his bills, including his life insurance premiums.

17. On or about May 18, 2015, Genworth sent a premium payment bill with a due date of June 15, 2015, to Marc Kaplan at the address of 15560 N Frank Lloyd Wright Blvd., No B4 407, Scottsdale, Arizona, 85260

18. On or about June 18, 2015, Genworth sent a letter to Marc Kaplan at the address of 8711 E. Pinnacle Peak Rd., Suite 321, Scottsdale, Arizona, 85255, regarding beneficiaries. There was no mention of overdue premium payment. All correspondence from June 18, 2015, on was sent to the 8711 Pinnacle Peak Rd. address.

19. On or about June 30, 2015, Genworth sent a premium Past Due Notice to

Marc Kaplan stating he was in a 31-day grace period, starting June 15, 2015. Due to Marc Kaplan's disability, he was unable to send a payment to Genworth immediately.

20. On August 22, 2015, Marc Kaplan abruptly passed away.

21. On or about August 24, 2015, Marci Kaplan issued a premium payment check to Genworth in the amount of $1,625.00.

22. On or about August 31, 2015, Genworth accepted the Policy premium payment from Marci Kaplan, thereby restoring the Policy. In a September 11, 2015, letter, Genworth admits that it applied the premium payment and "reactivated" the Policy.

23. On or about September 2, 2015, Genworth (having accepted the prior premium payment from Marci Kaplan that had been purportedly outstanding) sent out the bill for the next premium payment with a due date of September 15, 2015. "Purportedly" because a careful premium payment accounting suggests that at the time Marc Kaplan supposedly missed a premium payment (because he was ailing and nearing the end of his life), Genworth was actually sitting on an premium surplus (*i.e.*, they had collected more premium money from Marc Kaplan over the years than he was contractually obligated to pay) at the time Marc Kaplan supposedly missed a month. Genworth cannot, on the one hand, legitimately contend it was owed a premium from Marc Kaplan at the time he purportedly missed one while, on the other hand, sit on extra premium monies collected from Marc Kaplan over the years that would have been enough to pay the premium that was purportedly missed in the Summer of 2015. At the very least, there appears to have been enough premium surplus in Genworth's coffers to have had the Policy current (or, at minimum, in a grace period) at the time Marci Kaplan tendered $1,625.00 in the middle of August 2015. This is presumably why some folks with apparent good sense at Genworth accepted Marci Kaplan's premium payment and "reactivated" the Policy … that is, of course, until some other folks without good sense at Genworth tried to renege, which is discussed next.

24. In a September 11, 2015, letter to Lauren Kaplan, Genworth alleged that the

Policy lapsed on June 15, 2015, for lack of payment. In its letter, Genworth alleged that it had extended the payment due date (June 15, 2015) for 61 days. Genworth also stated that it refused to make payment of Marc Kaplan's life insurance policy.

25. Again, however, due to the premium surplus that Genworth had collected over many years, the Policy had been paid in advance for sufficient time to cover any payment that Marc Kaplan may have missed, and was still in effect at the time of his passing.

26. Genworth sent a check to Marci Kaplan in the amount of the $1,625.00 quarterly premium payment that had been accepted by Genworth in August 2015. Genworth's check has not been (and will not be) cashed.

27. The Beneficiaries are entitled to life insurance benefits in the amount of $5,000,000.00 whether that be due to there having been enough premium surplus in Genworth's coffers at the time an ailing Marc Kaplan purported to miss a premium payment or whether that be due to Genworth's proper acceptance of the August 2015 premium payment made by Marci Kaplan and admitted "reactivation" of the Policy or whether that be for some other reason not yet discovered.

28. Genworth has erred in denying the Beneficiaries the life insurance benefits to which they are entitled under the Policy.

29. Genworth knows or should know that its failure to provide full payment to the Beneficiaries is not justified in light of the clear terms of the Policy, Genworth's conduct (*e.g.*, accepting premium payment in August 2015 and admittedly "reactivating" the Policy), and the more than sufficient premium payment surplus that existed at the time a premium payment was purportedly missed.

30. Genworth knows, or should know, that its unreasonable, incomplete, incompetent, and outcome-oriented evaluation of the Beneficiaries' claims in this matter is a breach of the duty and obligation of good faith and fair dealing owed to the Beneficiaries under the Policy and that Genworth is liable for any damages caused as a result of its

conduct.

31. With respect to the events giving rise to this lawsuit, at various times and in various ways, Genworth acted through other agents and employees.

**CLAIM - BREACH OF INSURANCE CONTRACT; IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

32. The foregoing allegations are hereby incorporated by reference.

33. Genworth entered into a life insurance contract with Marc Kaplan, for which the Beneficiaries are owed the life insurance benefits prescribed by the Policy following Marc Kaplan's passing.

34. Genworth was paid premiums in exchange for its promise to make payment of $5,000,000.00 to his beneficiaries (the Plaintiffs) in the event Marc Kaplan passed away while the Policy was in effect.

35. The Policy was in full force and effect at the time of Marc Kaplan's passing.

36. The Policy, like all contracts within the State of Arizona, contains an implied covenant of good faith and fair dealing.

37. Marc Kaplan and the Beneficiaries fulfilled all of their obligations under the Policy.

38. Genworth failed to perform its obligations under the Policy.

39. By wrongfully failing to process the Claim in good faith and pay the Claim in full, Genworth breached the Policy, including the implied covenant of good faith and fair dealing in that agreement, thereby depriving the Beneficiaries of the benefits they were to have received under the Policy.

40. Genworth failed to handle the Claim in a reasonable manner and has failed to make payments owed under the Policy to the Beneficiaries.

41. As a direct and proximate result of Genworth's breach of contract and breach of the implied covenant of good faith and fair dealing, the Beneficiaries have sustained reasonably foreseeable damages, and continue to sustain such damages, in an amount to be proven at trial.

42. The Beneficiaries have no other adequate remedy at law to address the injuries they have suffered as a result of Genworth's denial of monies owed under the Policy.

43. As a further result of Genworth's denial of monies owed under the Policy, the Beneficiaries have been forced to retain legal counsel to represent them in this matter and have agreed to pay reasonable attorneys' fees and costs in relation to same.

44. The Beneficiaries are entitled to an award of attorneys' fees under A.R.S. § 12-341.01.

45. The Plaintiffs, Marci Kaplan, Brian Kaplan, and Lauren Gilbert, demand a trial by jury on all issues so triable as a matter of right.

46. WHEREFORE, on this claim, the Plaintiffs, Marci Kaplan, Brian Kaplan, and Lauren Gilbert, request judgment against Genworth Life and Annuity Insurance Company, as follows:

A. For compensatory damages in a just and reasonable amount (including contractual damages in the amount of $5,000,000.00, and extra-contractual or consequential damages);

B. For attorneys' fees and costs, and in the event of a default judgment, for attorneys' fees in the amount of $4,500.00;

C. For pre- and post- judgment interest;

D. For taxable costs pursuant to A.R.S. §12-341; and

E. For such other relief as the Court deems equitable, just, and / or proper.

**RESPECTFULLY SUBMITTED** this 9th day of April, 2018.

**MERLIN LAW GROUP, P.A.**

/s/ Jeffrey G. Zane
Jeffrey G. Zane, Esq.
*Attorneys for Plaintiffs*